Vincent A. Lupiano, J.
This is a motion under rule 106 of the Rules of Civil Practice to dismiss the complaint for insufficiency in law.
The alleged libelous publication upon which the complaint is based and which was printed in Time Magazine concerning the New York J ournal-American and related to the case of the so-called “ Mad Bomber ”, reads as follows:
" Bombs Away
“ The ‘ Mad Bomber ’ who has been busily planting homemade bombs around New York (Time, Jan. 7) has given the city’s newspapers one of the best homemade stories in years. No paper has matched the space of the big black headlines that Hearst’s Journal-American has given the case. But last week, after the Journal received a surprisingly frank letter from the bomber and had the chance to score the most sensational beat on the story to date, Scripps-Howard’s World-Telegram and Sun snatched the story away.
“When the Journal received the crudely printed letter (signature: F. P.), it decided to withhold the story from police and aim for the jackpot: the bomber’s surrender. Instead of printing the letter, the Journal ran a wily item in its Personals column intimating that it would ‘ help ’ the bomber if he gave *190 himself up. The ad caught the eye of World-Telegram Managing Editor Eichard Starnes, who guessed immediately that the Journal had received a letter from the bomber, checked out his hunch, and broke a Page One story on the bomber’s ‘ new letter to a New York newspaper, hinting that he may declare at least a temporary truce. ’ Three days later, when most other New York papers had printed the story, the JournalAmerioan’s account finally appeared under an eight-column banner.
“ The Mad Bomber’s letter contained more clues to his identity than police had unearthed in years. Among the disclosures: he had spent ‘ most of my adult life in bed ’; two of the bombs he had deposited last year had not yet been found; he named three former New York State officials who, he said, would ' know all ’. The Journal gave the bomber’s letter to police, who were able to eliminate hundreds of questioned signatures and narrow the search — as the press noted proudly — down to ' 42 suspects who are being followed night and day.’ But at week’s end the bomber was still at large — or in bed. ’ ’
This article may conceivably have caused readers of the newspaper owned by the corporate plaintiff to lose confidence in its reliability. It is essential to a newspaper of general circulation that it have a reputation for reliability, integrity and responsibility to the community which it serves. I do not, of course, now determine that the publication complained of did in fact have an adverse effect. The question, however, is one for the triers of the facts; it is for them to determine whether the article complained of was libelous, that is, whether it affected unfavorably the business reputation of the corporate plaintiff.
As to the individual plaintiff, the case seems somewhat tenuous. However, here too there is a question of fact as to whether the publication may be read — that is, whether it could reasonably be read — as referring to him in his capacity as publisher of the newspaper. The individual plaintiff has pleaded in substance or effect that he was the publisher of the newspaper referred to in the allegedly libelous material and was known as such and that therefore the actions and decisions of the newspaper adversely commented upon in Time Magazine were understood by its readers as being the actions and decisions of the individual plaintiff, although he was not specifically mentioned or referred to by name or title.
This is a borderline case even as to the corporate plaintiff; insofar as the individual plaintiff is concerned, I may not agree that the publication complained of referred to him but the triers *191 of the facts may think differently. Similarly, I may not feel that the corporate plaintiff, the owner of the Journal-American, has been injured in its business reputation; but the triers of the facts may not agree with me. It would serve no useful purpose to discuss the numerous authorities which have been adverted to in the exhaustive and thoughtful briefs of the respective parties. Questions as to whether a publication is libelous, whether it has caused damage to reputation, whether it may be properly and reasonably understood as referring to an individual not specifically mentioned, are all within the peculiar competence of jurors who have the responsibility of deciding the factual issues. There should be full opportunity here for consideration of facts, for the presentation of evidence of damage and for the evaluation of live testimony. The case should not be decided upon the basis of the bare pleadings and upon the publication complained of without reference to extrinsic evidence.
The motion under rule 106 of the Rules of Civil Practice is denied and the defendants may serve their answer within 20 days after service upon their attorneys of a copy of this order with notice of entry.